# NOT FOR PUBLICATION


**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**12-1326**

**STATE OF LOUISIANA**

**VERSUS**

**TERRANCE WAYNE GOUDEAU**


**\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, DOCKET NO. 24906-10**
**HONORABLE CLAYTON DAVIS, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\*\***


**SYLVIA R. COOKS**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

**AFFIRMED.**

John F. DeRosier, District Attorney, 14th JDC
Carla S. Sigler, Assistant District Attorney
Karen C. McLellan, Assistant District Attorney
901 Lakeshore Drive, Suite 800
Lake Charles, LA 70601
(337) 437-3400
**ATTORNEY FOR APPELLEE**
   State of Louisiana

Paula C. Marx
Louisiana Appellate Project
P.O. Box 80006
Lafayette, LA 70598-0006
(337) 991-9757
**ATTORNEY FOR DEFENDANT/APPELLANT**
   Terrance Wayne Goudeau

**COOKS, Judge.**

On April 29, 2010, Defendant, Terrance Wayne Goudeau, was in a telephone chat-room with Marlon Moore. Defendant believed Moore was a woman and arranged to meet Moore later that evening for sex. After arriving at the meeting place, Defendant asked Moore to drive him to Texas, but Moore refused. Defendant then produced a gun and went with Moore to his vehicle. Moore was forced to drive Defendant around before being ordered to drive to an area called Transit Mix.

After arriving at Transit Mix, Moore was forced to exit his vehicle at gunpoint. Defendant shot Moore in his left arm, and the bullet entered Moore's chest. According to Moore, Defendant tried to shoot him again, but the gun malfunctioned. As Moore was laying on the ground injured, Defendant took the car and left Moore. Luckily for Moore, he still had his cellphone and was able to contact the police.

Police officers eventually found Defendant in Oakdale, Louisiana. Defendant initially told police that he fell asleep in Moore's vehicle, and when he woke up no one was there. He stated he found the car keys and drove back to Oakdale. Defendant later confessed to shooting Moore.

On July 22, 2010, Defendant was indicted by a grand jury for armed robbery with a firearm, in violation of La.R.S. 14:64.3, and for attempted first degree murder, in violation of La.R.S. 14:27 and 14:30. Pursuant to a plea agreement, Defendant pled guilty to the amended charge of armed robbery and to attempted first degree murder. Defendant was sentenced to serve fifty years for each offense, without benefit of parole, probation, or suspension of sentence to run concurrently. Defendant timely filed a motion to reconsider sentences, which was heard and denied.

2

Defendant is now before this court on appeal, arguing his concurrent fifty-year sentences at hard labor are excessive. After a thorough review of the record, we affirm Defendant's sentences.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant argues his concurrent fifty-year sentences at hard labor are excessive considering all the mitigating circumstances, particularly his lack of a prior criminal history and his youthfulness. This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks our sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766

3

So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The penalty for armed robbery is ten to ninety-nine years at hard labor, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64. As such, Defendant's fifty-year sentence is about half of the maximum possible sentence. Additionally, prior to his plea agreement, Defendant faced an additional five consecutive years, without benefit of parole, probation, or suspension of sentence for armed robbery with a firearm. La.R.S. 14:64.3(A).

The penalty for attempted first degree murder is ten to fifty years without benefit of parole, probation, or suspension of sentence. La.R.S. 14:27 and 14:30. As such, he received the maximum possible sentence. The sentences, however, were ordered to run concurrently; thus, Defendant was not exposed to any additional time above his sentence for armed robbery.

At sentencing, defense counsel urged the trial court to consider Defendant's young age of eighteen at the time the offenses were committed. Additionally, Defendant was raised by his grandmother and his parents did not play an active role in his life. Defense counsel described Defendant as a very shy man who accepted responsibility for his actions. Defense counsel stressed that Defendant was not a cold-blooded killer, but was under the influence of drugs and alcohol when he was lured to the scene under the ruse of communicating with a woman. When the Defendant came to and realized who he thought was a woman was in fact a man, he panicked, lost his head, and committed the offenses. After he was

4

apprehended by the police, he fully admitted committing the offenses. Defense counsel added that Defendant had no ill motive when he left home that day. Defendant had aspirations of obtaining his Graduate Equivalent Degree (GED) and learning a trade. He had a supportive girlfriend who retained defense counsel to represent Defendant. Defense counsel asserted Defendant was not a hopeless citizen and urged the trial court to impose a sentence toward the lower end of the mandatory minimum. He maintained the offenses were not justified but stressed that the circumstances in Defendant's case were not likely to reoccur.

Defendant testified on his own behalf, asking the trial court to impose the minimum possible sentences. He admitted he had done wrong and apologized for the pain he brought to the victim's life. Defendant asserted he had no intention of going out and doing what he did. He voiced his plans to get his GED, become a welder, have a family, and do the right things in life.

For the record, counsel for the State read aloud a lengthy letter from the victim, detailing how he has suffered and continues to suffer, both physically and mentally, as a result of the injuries he received from being shot by Defendant. The victim urged the trial court to show no mercy, similar to the lack of mercy shown by Defendant to the victim when he begged for his life. The State then stressed that Defendant showed no respect for human life when he was in the passenger's side of the vehicle, pulled a gun on the victim, demanded the victim drive him to several places before getting out of the car and shot the victim. After the victim hit the ground, Defendant attempted to shoot the victim a second time, but the gun would not fire. Defendant then fled in the victim's vehicle, leaving the victim to die. He then threw the gun out on the interstate on his way to Oakdale, Louisiana, where he was later arrested.

The State subsequently addressed the factors of La.Code Crim.P. art. 894.1 for the trial court to specifically consider in sentencing Defendant. First,

5

Defendant's conduct during the commission of the offenses manifested deliberate cruelty to the victim. Defendant used threats of or actual violence in the commission of the offenses. The victim was hospitalized for several months and incurred substantial medical expense. The offenses resulted in significant permanent injury and economic loss to the victim and his family. The victim reported having difficulty sleeping at night. Additionally, Defendant used a dangerous weapon in the commission of the offenses. In response, defense counsel conceded there was no justification for Defendant's actions but maintained there were mitigating factors such as his upbringing that were important to consider in sentencing.

The trial court stated that it had seen social histories worse than that experienced by Defendant. It questioned Defendant's true motive and reason for bringing a gun to the meeting with the victim. The trial court believed the internet was a convenient way to meet and select victims targeted for robberies.

At the hearing on Defendant's motion to reconsider sentences, defense counsel urged the trial court to consider that Defendant was a young, salvageable man with no prior criminal history. Defense counsel stressed that the trial court consider what Defendant could do in the future and give him a chance to become a contributing member of society following his punishment. Defense counsel added the extent of the victim's injuries were not as severe as previously indicated by the victim and was not supported by the record. He also maintained that the situation involved a unique set of circumstances under which Defendant met the victim under false pretenses; thus, it was highly unlikely that such a situation would arise again.

The State urged the trial court to consider the severity and extreme violent nature of the crime. With regard to the victim's injuries, the State reported the victim incurred over $60,000 in medical bills which were covered by insurance.

6

The victim was required to pay $5,000 out-of-pocket. Considering the extent of the medical bills and the fact that the bullet remained in the victim's body, the State argued the sentences were appropriate.

In response, the trial court noted Defendant decided to use a gun when things did not turn out the way he envisioned. The use of a weapon also mandated a harsher sentence. Defendant's motion was subsequently denied.

In *State v. Thompson*, 12-83, pp. 8-9 (La.App. 3 Cir. 10/10/12), 100 So.3d 375, 380-81, this court reviewed the jurisprudence and found mid-range sentences for armed robbery that were not considered excessive:

> In *State v. Smith*, 01-2574 (La.1/14/03), 839 So.2d 1, the supreme court affirmed a forty-year sentence imposed on a first offender for a conviction of armed robbery. The supreme court noted "[t]his sentence is within the thirty-five to fifty-year range this Court has found acceptable for first offenders convicted of armed robbery. *State v. Thomas*, 98-1144, p. 2 (La.10/9/98), 719 So.2d 49, 50; *State v. Augustine*, 555 So.2d 1331, 1332 (La.1990) and the cases cited therein." *Id.* at 4.
>
> In *State v. Gordon*, 11-898 (La.App. 3 Cir. 2/22/12), 85 So.3d 242, this court found the first felony offender's sentence of forty years for armed robbery was not excessive. In *State v. Jefferson*, 40,439 (La.App. 2 Cir. 1/27/06), 920 So.2d 984, the second circuit found the first-offender's sentence of thirty years for armed robbery plus an additional five years for a firearm enhancement was not excessive. Similarly, in *State v. Price*, 04-812 (La.App. 5 Cir. 3/1/05), 909 So.2d 612, the fifth circuit found a forty-year sentence for armed robbery with a firearm was not unreasonably excessive. Finally, in *State v. Hartwell*, 03-1214 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, *writ denied*, 04-448 (La.6/25/04), 876 So.2d 832, the fifth circuit found concurrent terms of thirty-five years imprisonment plus an additional five years for the use of a firearm was not excessive for a first offender found guilty of two counts of armed robbery.

In *State v. Tyler*, 47,220 (La.App. 2 Cir. 6/20/12), 93 So.3d 842, *writ denied*, 12-1552 (La. 1/25/13), 105 So.3d 64, the court affirmed the defendant's maximum fifty-year sentence for attempted first degree murder and attempted second degree murder. The defendant in *Tyler* was nineteen years old at the time of the crime with no prior criminal record. Also, he was in and out of group homes as a child. The trial court focused on the defendant's lack of justification and conduct in the

offenses that arose from a minor domestic dispute. The defendant fired shots at responding officers during a foot chase through an apartment complex. "The trial court found that the aggravating circumstances 'greatly outweigh' defendant's lack of criminal history, that he posed an imminent threat to the public, and that any lesser sentences would deprecate the seriousness of the offenses." *Id*. at 845.

Considering the seriousness of the offenses charged and Defendant's use of a deadly weapon without justification, we find no error in the trial court's determination that the aggravating circumstances outweigh the mitigating circumstances of the Defendant's youth, lack of criminal history, and social history. Accordingly, we affirm Defendant's sentences.

## DECREE

For the foregoing reasons, Defendant's sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules–Courts of Appeal, Rule 2-16.3.